**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

NORMAN HOEWISCHER,

        Plaintiff,

vs.                                          Case No. 3:11-cv-405–J-32JBT

EDMUND TERRY,

        Defendant.

**ORDER**

Plaintiff Norman Hoewischer brought suit pursuit to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et. seq.*, claiming that a shopping center owned by Defendant Edmund Terry fails to provide reasonable access to individuals with disabilities. Doc. 5  This case is before the Court on Hoewischer's Motion for Partial Summary Judgment on Defendant's First Affirmative Defense. Doc. 16.  This motion presents the question of whether a landlord may use the terms of his lease to avoid responsibility for his property's alleged violations of the ADA.  The Court finds that the answer to this question is no.

**I.  THE AMERICANS WITH DISABILITY ACT**

Title III of the ADA provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

The ADA contains a number of requirements for places of public accommodation, and a failure to comply with these requirements is often defined as discrimination. Most relevant to this case, the ADA provides that discrimination includes "a failure to remove architectural barriers . . . where such removal is readily achievable." § 12182(b)(2)(A)(iv). If a place of public accommodation is found to violate this provision, a court may issue an injunction requiring the defendant "to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities." § 12188(a)(2). A prevailing plaintiff is not entitled to damages, but he may recover reasonable attorneys' fees. §§ 12188(a), 2000a-3(b).

**II.  STANDARD OF REVIEW**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The burden of demonstrating the satisfaction of this standard lies with the movant, who must present 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' that establish the absence of any genuine, material factual dispute." Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1252-53 (11th Cir. 2003).

**IV.  DISCUSSION**

The Amended Complaint alleges that Hoewischer, who qualifies as an individual with disabilities under the ADA, "encountered architectural barriers" when visiting a shopping center owned by Terry. Doc. 5 at 2. Hoewischer further alleges that these barriers "endangered his safety, and have denied him the full and equal access to Defendant's

property." Id.

In his first affirmative defense, Terry alleges that the leases between him, as landlord, and his tenants, who are not parties to this litigation, "provide that compliance with the ADA shall be the lease obligation of the tenants." Doc. 13 at 2. Terry thus asserts that only his tenants may be liable for the shopping center's alleged violations.

Hoewischer asks the Court to grant summary judgment against Terry's first affirmative defense and rule as a matter of law that Terry is liable under the ADA for any violations at the shopping center regardless of the terms of the leases. Doc. 16. According to Hoewischer, the lease may only be used to allocate the cost of compliance between the landlord and tenants after the conclusion of this litigation. Id.

The issue of whether a landlord may shift its legal responsibility to comply with the ADA to its tenants was comprehensively addressed by the Ninth Circuit in Botosan v. Paul McNally Realty, 216 F.3d 827, 832-34 (9th Cir. 2000). The Ninth Circuit found that, because the ADA applies to "any person who owns, leases (or leases to), or operates a place of public accommodation," see § 12182(a), "[t]he express terms of the ADA hold a landlord liable for noncompliance." Botosan, 216 F.3d at 832. The court also noted that the ADA prohibits discrimination that is conducted "directly, or through contractual, licensing, or other arrangements." Id. at 833 (quoting § 12182(b)(1)(A)(I)). After analyzing the legislative history of these provisions, the court concluded that the congressional intent "confirms that a landlord has an independent obligation to comply with the ADA that may not be eliminated by contract." Id.

In Botosan, the Ninth Circuit also found that its interpretation of the ADA was

supported by that of the Department of Justice ("DOJ").  A regulation promulgated by the DOJ provides:

> Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part. *As between the parties*, allocation of responsibility for complying with the obligations of this part may be determined by lease or other contract.

28 C.F.R. § 36.201(b) (emphasis added).  Although this regulation allows a landlord and tenant to allocate responsibility for complying with the ADA in their lease, because any such allocation is effective only "between the parties," the terms of the lease will not affect the rights of a third party who brings suit under the ADA.  Botosan, 216 F.3d at 833.[1]

Finally, the Botosan court said that its interpretation was supported by the public's interest in encouraging compliance with the ADA.  The court explained that "[a] landlord who is aware of its liability for any ADA violations found on its premises has a strong incentive to

---

[1] This interpretation of the regulation is supported by the DOJ's Technical Assistance Manual, which states:

> Both the landlord and the tenant are public accommodations and have full responsibility for complying with all ADA title III requirements applicable to that place of public accommodation. The title III regulation permits the landlord and the tenant to allocate responsibility, in the lease, for complying with particular provisions of the regulation. However, any allocation made in a lease or other contract is only effective as between the parties, and both landlord and tenant remain fully liable for compliance with all provisions of the ADA relating to that place of public accommodation.

Id. (quoting Department of Justice, Technical Assistance Manual on the American With Disabilities Act § III-1.2000 (1994)).

4

monitor compliance on its property." Id. at 834.  Moreover, because a place of public accommodation is only required to remove barriers when doing so is "readily achievable," if a large landlord were able to shift this responsibility to a smaller tenant with less resources, less repairs could be required under the ADA.  Id.

A number of other courts have likewise held that a landlord may not use the terms of a lease to avoid its responsibilities under the ADA.  See, e.g., Connors v. Orlando Regional Healthcare System, Inc., No. 6:08-cv-206-Orl-35-DAB, 2009 WL 2524568, at * 2 (M.D. Fla. June 12, 2009) (following the reasoning of Botosan); Access 4 All, Inc. v. Atl. Hotel Condo. Ass'n, Inc., No. 04-61740-CIV, 2005 WL 5643878, at *14 (S.D. Fla. 2005) (same); Frotton v. Barkan, 219 F.R.D. 31, 32 (D. Mass. 2003) (same).[2]

This Court finds the reasoning of these cases to be persuasive.  The ADA makes the landlord and tenant of a place of public accommodation each individually responsible for any violations found on the leased property.  While a landlord and tenant may use the terms of their lease to allocate costs associated with the ADA between themselves, a lease cannot relieve a landlord of its underlying obligations under the ADA.[3]  Terry's First Affirmative Defense thus fails as a matter of law.

---

[2] Terry has cited, and the Court has found, no case that holds otherwise.  There appears to be no Eleventh Circuit authority on this point.

[3] This holding does not "alter completely the economic bargain that has been entered into between the parties," as Terry contends.  See Doc. 21 at 3.  As explained above, the parties remain free to allocate the costs of compliance with the ADA and any costs associated with ADA litigation.  Thus, Terry may, either in this suit or separately, seek to enforce the relevant terms of the respective leases.  However, the Court expresses no opinion regarding the respective obligations of Terry and his tenants under the leases at issue in this case.

Accordingly, it is hereby

**ORDERED**:

Hoewischer's Motion for Partial Summary Judgment on Defendant's First Affirmative Defense (Doc. 16) is **GRANTED**.

**DONE AND ORDERED** at Jacksonville, Florida this 10th day of November, 2011.

_____
TIMOTHY J. CORRIGAN
United States District Judge

js.

Copies:

counsel of record